UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**MICHAEL JOHNSON,**

**Plaintiff,**

**v.** **Case No. 23-CV-1077**

**TIMOTHY WALTZ,**

**Defendant.**

---

## DECISION AND ORDER

---

Plaintiff Michael Johnson, who is incarcerated and represented by counsel, brings this lawsuit under 42 U.S.C. § 1983. Johnson was allowed to proceed on a claim under the Eighth Amendment because the defendant Timothy Waltz allegedly refused to sign security paperwork for Johnson's off-site appointment at Froedtert Hospital. The parties filed cross motions for summary judgment, which are fully briefed and ready for a decision. (ECF Nos. 61, 64.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 5, 24.)

## FACTS

The facts are largely undisputed. At all times relevant Johnson was incarcerated at Waupun Correctional Institution. (ECF No. 77, ¶ 1.) Waltz was a correctional officer at Waupun and has held the position since 1995. (*Id.*, ¶ 2.)

On July 14, 2023, Johnson had an off-site ophthalmology appointment at Froedtert Hospital's Eye Institute in Milwaukee, Wisconsin. (ECF No. 77, ¶¶ 8, 9.)

Johnson suffers from glaucoma and his appointment concerned his glaucoma, although Johnson does explain exactly what the appointment was for. (ECF No. 79, ¶ 2.) Waltz asserts that at the time he was not aware that Johnson had glaucoma and did not know the seriousness of Johnson's eye condition. (ECF No. 77, ¶¶ 35-36.) Johnson states that, because Waltz had previously accompanied Johnson to the Froedtert Eye Institute on a few occasions, Waltz was aware that Johnson suffered from an eye condition. (*Id.*, ¶ 36.)

Waltz and non-defendant Correctional Officer Nick Erdmann were assigned to transport Johnson to his eye appointment, which was scheduled for 10:45 a.m. (ECF No. 77, ¶¶ 10-13.) Upon arriving at Froedtert, Waltz went to the Froedtert security officer and notified them that he had an inmate with an appointment. (*Id.*, ¶ 15.) The Froedtert security officer asked Waltz to sign the "Froedtert Hospital Security Department Forensic Checklist (Forensic guideline)." (*Id.*, ¶ 16.) This form outlines the responsibilities of a corrections officer escorting a prisoner to an appointment at Froedtert, including when and how officers are to accompany prisoners; how the prisoners are to be restrained; and where the prisoners are allowed to wait for appointments. (*Id.*, ¶¶52-56.) The officer who signs the form is acknowledging "that Froedtert Hospital Security has provided the [corrections] officer with all the above information. This information contains important regulations and procedures that are required by law according to the Joint Commission." (*Id.*, ¶ 57.)

Waltz states that he had never been asked to sign any forms or paperwork for a prisoner appointment prior to this occasion. (ECF No. 77, ¶¶ 17, 45.) In the past, sometime in either 2018 or early 2019, Waltz was told by former Security Director Tony

Meli not to sign any Froedtert security paperwork. (*Id.*, ¶¶ 45-47.) Waltz states that this directive was also given to other corrections staff at the time. (*Id.*, ¶ 46.)

On July 14, 2023, Waltz told the Froedtert security officer that he had never had to sign anything in the past and that he could not sign anything that day because he had been previously instructed not to, and as such he did not have the authority to do so. (ECF No. 77, ¶ 17.) Waltz then contacted a supervisor at Waupun, Captain Scott Kinnard, who told Waltz not to sign the paperwork until it was reviewed by current Security Director Yana Pusich. (*Id.*, ¶¶ 18-20.) Waltz informed the Froedtert security officer that he had contacted his supervisor and was directed not to sign any paperwork until the Waupun Security Director could review it. (*Id.*, ¶ 18.) Waltz then gave the Froedtert security officer a fax number to which they could fax the paperwork that they wanted Waltz to sign. (*Id.*, ¶¶ 22-23.) Waltz did not hear from anyone either at Waupun or Froedtert until approximately an hour and a half later (12:15 p.m.), when staff at the Froedtert Eye Institute informed Froedtert security that Waupun would have to reschedule Johnson's appointment. (*Id.*, ¶ 27.)

While Waltz was waiting, at approximately 11:37 a.m. Froedtert's lead security officer, Katie Zanola, emailed Lieutenant Keith Immerfall of the Wisconsin Department of Corrections, attaching a copy of the paperwork Froedtert wanted Waltz to sign. (ECF No. 68-1 at 2.) At 12:03 p.m., Immerfall forwarded Zanola's email to Pusich without any explanation. (*Id.* at 1-2.) At 12:58 p.m., Pusich forwarded the email to Warden Randall Hepp, copying Deputy Warden Emily Propson and Health Services Manager Ashley Haselu, stating:

> We had a medical appointment scheduled at Froedtert today. When staff arrived, they were instructed to sign the attached. Staff indicated that they needed to consult with the shift supervisors prior to signing the forms, however by the time Lt. Immerfall was provided a copy of this agreement, the scheduled appointment time has passed, which resulted in WCI inmate being transported back without being seen.
>
> Moving forward, when we have healthcare appointments scheduled at Froedtert, I would like to ensure staff are aware that they will be required to sign these guidelines, and have transport staff review the document ahead of time to ensure familiarity with the expectations.
>
> Thoughts/concerns?

(*Id.* at 1.) Randall forwarded the email to Robert Weinman, a nursing coordinator at Waupun, asking Weinman if he was familiar with Froedtert's documents and noting that the documents presented some concerns. (*Id.*) He asked Weinman to take a look at the documents and asked to discuss them with Weinman the next time he is at Waupun. (*Id.*) As of September 25, 2023, Weinman was still working with DOC legal counsel and e-mailed Hepp stating, "Guidance we have received is not schedule any appointments with [Froedtert] until this issue can be further worked out." (ECF No. 68-4 at 1.)

Johnson did not have another appointment with an ophthalmologist until February 8, 2024, over six months later. (ECF No. 79, ¶ 14.) On September 8, 2023, Johnson told Waupun nursing staff that he was "very concerned that he is having issues seeing with his good eye." (*Id.*, ¶ 18.) On January 22, 2024, Johnson reported to the nursing staff that he was having "difficulty with walking into walls, seeing large objects, and reading the wall clock." (*Id.*, ¶ 19.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Johnson claims that Waltz was deliberately indifferent to his glaucoma when he failed to prevent his July 14, 2023, appointment from being cancelled. A plaintiff must demonstrate four elements to establish deliberate indifference under the Eighth Amendment. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). First, "there must be a risk of harm to the plaintiff that is so objectively serious as to be 'excessive' (and that risk must in fact materialize)." *Id.* Second, "the defendant must 'know' of the risk (put differently, he must possess subjective awareness that the risk exists)." *Id.* Third, "the defendant's response to the risk must be so inadequate as to constitute 'disregard' of (or deliberate indifference toward) the risk." *Id.* Finally, "the plaintiff must prove that the defendant's deliberate indifference actually *caused* his injury." *Id.* (citing *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011)) (emphasis in original).

No reasonable factfinder could conclude that Waltz was deliberately indifferent to an objectively serious risk. Johnson does not provide any evidence that Waltz knew the nature of Johnson's eye appointment. For instance, he does not explain why he had the appointment and what sort of care he was scheduled to receive. It is unclear whether the appointment was simply a routine check-up to monitor his glaucoma or if the appointment was to address a new or worsening symptom of his glaucoma.

Secondly, it cannot be said that Waltz's response to any risk to Johnson was so inadequate as to constitute a disregard of that risk. As soon as he was asked to sign paperwork that was of the kind he was previously instructed not to sign, Waltz contacted a supervisor and was told not to sign the paperwork until it was reviewed by

Security Director Pusich. (ECF No. 77, ¶¶ 18-20.) Waltz then gave the Froedtert security officer a fax number to which they could fax the paperwork that they wanted Waltz to sign. (*Id.*, ¶¶ 22-23.) Any delay in getting the paperwork signed, which ultimately resulted in Johnson's appointment being rescheduled, was not caused by anything Waltz did or did not do. Waltz was simply following instructions from his superiors.

Furthermore, Johnson also does not provide any evidence that, as a result of missing the July 14, 2023, appointment, his condition worsened. While there is evidence that he complained of additional issues in September 2023 and January 2024, Johnson does not present evidence connecting these complaints to having missed the July appointment.

Johnson argues that Waltz should not have relied on a verbal command from 2018 or 2019 and signed the forms anyway. However, it is undisputed that Waltz was told by his supervisor, Captain Kinnard, *that the day of Johnson's appointment*, that he should not sign the forms. To the extent that Pusich did not appreciate that Waltz and Johnson were waiting for an immediate decision, Johnson does not present any evidence to indicate that any miscommunication was a result of Waltz's action or inaction.

"Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). "It is therefore incumbent on the party opposing a summary judgment motion to 'inform the district court of the reasons why summary judgment should not be entered'" *Reed v. Brex, Inc.*, 8 F. 4th. 569, 578 (7th Cir. 2021) (quoting *Riely v. City of*

*Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018)). Johnson fails to provide evidence that Waltz knew Johnson was exposed to an excessive risk of harm; that Waltz's response was so inadequate that Waltz disregarded the risk; and that Waltz's actions caused Johnson's condition to deteriorate. Summary judgment is granted in Waltz's favor.

## CONCLUSION

For the foregoing reasons, Waltz's motion for summary judgment is granted, and Johnson's motion for summary judgment is denied. Waltz also argued that he was entitled to qualified immunity. Because the court finds in his favor on the merits, it does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Waltz's motion for summary judgment (ECF No. 61) is **GRANTED.**

**IT IS FURTHER ORDERED** that Johnson's motion for summary judgment (ECF No. 64) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests

an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 16th day of November, 2026.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge